IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSHUA B. COLE, individually and on behalf of R AND D USA, LLC d/b/a SCRIBNER NATURAL PRODUCTS, a Nebraska limited liability company, | ) ) ) ) ) | CASE NO. |
| Plaintiff, | ) ) | |
| vs. | ) ) | COMPLAINT |
| R AND D USA, LLC d/b/a SCRIBNER NATURAL PRODUCTS, a Nebraska limited liability company, RICHARD W. BELL, and DAVID E. DENNIS, | ) ) ) ) ) | |
| Defendants. | ) | |

COMES NOW Plaintiff Joshua B. Cole, individually and on behalf of R AND D USA, LLC d/b/a Scribner Natural Products, and for his Complaint against R AND D USA, LLC d/b/a Scribner Natural Products, Richard W. Bell, and David E. Dennis, respectfully states and alleges as follows:

<u>INTRODUCTION</u>

1.  Defendant R AND D USA, LLC d/b/a Scribner Natural Products ("R AND D" or the "Company") used false statements and omissions about R AND D's financial condition and prospects to induce Plaintiff Joshua B. Cole ("Cole") to invest $250,000.00 in the Company and to loan the company an additional $15,500.00. Cole has not received any return on his investments in R AND D. Instead, the principals of R AND D, Defendants Richard W. Bell ("Bell") and David E. Dennis ("Dennis"), sold the assets of R AND D to a third party—Sense Technologies, Inc.—and kept the proceeds of the sale for themselves. In this action, Cole seeks to recover damages against Bell and Dennis on behalf of R AND D, and to recover, for himself, his losses as a result of his investment in the Company.

PARTIES

2. Cole is an individual residing in Williston, North Dakota. Cole brings this suit individually and, pursuant to Neb. Rev. Stat. § 21-165, on behalf of R AND D.

3. Defendant R AND D is a Nebraska limited liability company engaged in the business of producing soy oil and soy meal, with its principal office in Scribner, Dodge County, Nebraska.

4. Defendant Bell is an individual who, on information and belief, resides in Highland Village, Denton County, Texas.

5. Defendant Dennis is an individual who, on information and belief, resides Flower Mound, Denton County, Texas.

JURISDICTION and VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000.00, and the parties have diversity of citizenship.

7. This Court has personal jurisdiction over the Defendants because each transacts business within the State of Nebraska.

8. Venue is proper in the District of Nebraska under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims brought occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

FACTUAL BACKGROUND

A. R AND D Ownership and Management

9. R AND D was organized as a limited liability company under the laws of the State of Nebraska on December 3, 2014.

10. Until late 2016, R AND D operated as an industrial food and feed products company operating a soy bean processing mill in Scribner, Nebraska.

11. R AND D is a manager-managed limited liability company and Bell and Dennis serve as its managers.

12. Bell and Dennis also serve as R AND D's Chief Executive Officer and Chief Operating Officer, respectively.

13. As the initial members and managers of R AND D, Dennis owned forty percent (40%) of R AND D's outstanding membership units, Bell owned twenty percent (20%) through 3900 Preston Hills Circle Family Trust, and Dennis' wife, Margaret Dennis, owned the remaining forty percent (40%).

14. As of October 15, 2015 R AND D had the following twenty-one members with the following ownership interests:

| SUMMARY OF R AND D OWNERSHIP | | |
|---|---|---|
| **Member** | **Units** | **Ownership %** |
| David W. Dennis | 1,990,000 | 19.9% |
| David Dennis, LLC | 4,389,194 | 43.8% |
| 3900 Preston Hills Circle Family Trust | 2,000,000 | 20% |
| Lago Blue, LLC | 49,100 | .49% |
| PSC Property Group, LLC | 9,500 | .095% |
| Theiring Family Trust | 15,000 | .15% |
| Goldsmith Family Trust | 15,000 | .15% |
| Milca Harbour Trust | 33,500 | .335% |
| Indigo Blue Properties, LLC | 5,100 | .051% |
| Kzoo Group, LLC | 284,500 | 2.845% |
| PIRG ONE, LLC | 112,750 | 1.1275% |
| Ted Kabat | 50,000 | .5% |
| Michael Walsh | 300,000 | 3% |
| Cascade Capital Corp. | 250,000 | 2.5% |
| Bill Rahauser | 50,000 | .5% |
| Russ Stevens | 6,000 | .06% |
| Sendhill K. Subramanian | 6,000 | .06% |
| John Schladeowitz | 26,946 | .26964% |
| Buck Vaughan | 29,940 | .2994% |
| Clubs Corp, Inc. | 14,970 | .1497% |
| Joshua B. Cole | 362,500 | 3.625% |

B.     <u>R AND D sells $250,000.00 in membership Units to Cole by means of misrepresentations and omissions of material facts.</u>

15. In April, 2015, Cole was approached by David Firshein, who represented himself as the "Consulting CFO to Scribner Natural Products", regarding an investment opportunity in the Company. Over the next several months, as set forth in paragraphs 16–29, below, Firshein made a variety of representations to Cole on behalf of R AND D, in order to induce Cole to purchase membership units (the "Units") in R AND D.

16. On April 22, 2015, Firshein solicited Cole to invest in R AND D via email, stating that R AND D produced high-quality soybean meal, was experiencing "a lot of growing customer demand," that its operation and revenues were "growing quickly," and that it was "full of upside."

17. On May 27, 2015, Cole signed a subscription agreement and invested $100,000.00 in R AND D.

18. On August 10, 2015, Firshein, again on behalf of R AND D, spoke with Mr. Cole and followed up that conversation with two emails. In these communications, Firshein represented that—

    a. While R AND D had "rough edges," it was "making major strides and that R AND D's prospects were "all great potential and clear growth ahead";

    b. That R AND D planned to issue at least $4,000,000.00 to $5,000,000.00, and up to $12,000,000.00, in industrial revenue bonds to finance the purchase of a mothballed industrial plant in Scribner, Nebraska;

    c. That an investment by Cole would "help the Company surge forward in closing all the bigger opportunities now really on its plate, and thereby help yourself";

    d.    That R AND D had "earned their way to being deserving of more support" and was "mostly performing well under pressure";

    e.    That while R AND D was "not perfect," his "optimism continue[d] to grow by the day that it is really accelerating on all fronts"; and

    f.    That he expected R AND D to secure a bridge loan to help it "accelerate through the closing" of the industrial revenue bonds.

19.    On August 11, 2015, Firshein, acting on behalf of R AND D, sent Cole another email attaching a draft acquisition for the adjacent industrial property and making the following representations:

    a.    That the acquisition of the industrial property was "all part of the opportunistic moves that [R AND D] [was] making to rapidly expand its business";

    b.    That Firshein was likely to "join the team in Scribner, NE for an all hands on deck big meeting that will take place next Friday, to capitalize on the immediate momentum and interest in their facilities";

    c.    That R AND D had "a lot planned for these next four weeks";

    d.    That at the price R AND D was willing to "grant for the units, it's a good bargain, as it will be the last of the cheap stock that they toss out";

    e.    That R AND D was "wincing a bit" at the unit price, "so it's just a trade for speed and flexibility"; and

    f.    That Firshein expected R AND D to "raise much cheaper capital very soon, and hence this is the best time to do this"; i.e., compared to Cole's first investment, the investment would be "three-times better on the risk-reward".

20.    Also on August 11, 2017, Firshein forwarded Cole an email from R AND D to a potential lender representing that acquisition of the adjacent facility would allow

R AND D to "further expand operations" and that R AND D was "moving into several other ventures such as a feed mill for moving several of our retail products forward."

21. On August 11, 2017, in reliance on the representations he received from Firshein, Cole invested an additional $50,000.00 in R AND D.

22. On September 23, 2015, Firshein sent Cole another email representing that R AND D was profitable, having "produced $329K in positive EBITDA" through July 31, 2015, and that it would be closing "the first of a couple of expanding $1.5M – $5.5M bridge financings, maybe as soon as this Friday, but I believe starting next week."

23. In that same September 23, 2015 email, Firshein informed Cole that R AND D was "tight on cash" and would have to "pay a couple key bills by this Friday, which we likely don't have enough to cover until we close, and which we must manage our way through." Firshein asked Cole if he was "open to chucking in another $50K," either as equity or as a "very short term note, which we will immediately repay out of the proceeds of the pending bridges." Firshein stated, "Richard Bell asked me to ask you for the equity." He added, "I'm confident we will close the larger financings at this point, as there is too much competing financing interest for it."

24. On September 24, 2015, Cole invested an additional $50,000.00 in R AND D.

25. On October 9, 2015, Firshein sent an email to Cole attaching a term sheet for bridge financing and stating, "We also have at least two larger bridge Term Sheets on the way in, probably for $5.5M each," and asking Cole to invest an additional $100,000 in R AND D. In this email, Firshein stated, for the first time, that the investment was "high risk," but added "we are much closer to breaking through than ever before. It is what it is – can you help? I think this will do it."

26. At 11:17 p.m. on October 9, 2015, Firshein sent Cole another email stating that, if Cole would invest an additional $134,000.00, Bell and Dennis would "re-document" his last investment and reduce its price, and price his additional investment to bring his total investment to over 5% of all outstanding member units. Firshein stated, "this should be enough to do everything we need and be most effective as we surge forward."

27. In the same email sent at 11:17 p.m. on October 9, 2015, Firshein made numerous representations about the financial condition of R AND D, including the following:

    a. That R AND D had "as much as $700K of locked up cash in built up inventory stocks," which he expected to "unlock" within a week or two, and that he believed this would generate $600,000.00 in revenue;

    b. That R AND D would use Cole's money to complete nutrition trials, finalize lender term sheets, facilitate lender due diligence, keep the industrial bond process moving forward, keep R AND D's certified public accountant "highly focused on critical financial reporting," and "a variety of other miscellaneous needs";

    c. That R AND D would have a first draft of a prospectus for its offer of industrial revenue bonds by the following week, in the amount of $10,000,000.00.

    d. That this investment "should finish the job."

28. On October 13, 2015, Cole invested an additional $50,000.00 in membership units of R AND D.

29. In addition to these written representations, Cole had numerous telephone calls with Firshein, on or around the dates of the emails alleged above, in which Firshein

made substantially similar representations on behalf of R AND D, including the following:

    a.    That R AND D would acquire additional industrial property in the near term to meet expansion needs in its soy crushing operation;

    b.    That R AND D was a financially viable company with earnings of over $320,000.00 before interest, taxes, depreciation, and amortization ("EBITDA") year to date through July 31, 2015;

    c.    That R AND D had the ability to and would procure long term financing through issuance of industrial revenue bonds by Dodge County, Nebraska in an amount exceeding $4,000,000.00.

    d.    That R AND D had secured strategic partnerships for sale, including export of its products, including xMeal soy feed for swine that would generate significant income for the Company;

    e.    That R AND D would immediately begin selling feed product to poultry producers, increasing income and profits and operating the processing facility in Scribner at capacity—resulting in $300,000.00 EBITDA per month during the fourth quarter of 2015 and beyond;

    f.    That R AND D had the financing necessary to ensure adequate levels of working capital in order to support expansion of the Company; and

    g.    That R AND D had the ability to and would acquire bridge financing necessary to fund the operation until completion and issuance of the industrial revenue bonds to fund the operation long term.

    30.    The representations that Firshein made on behalf of R AND D, set forth in paragraphs 16 – 29, above, were false, and omitted to state facts necessary to make the representations not misleading. In particular, R AND D and its agents failed to state—

a. That R AND D had significant debt that it had no realistic prospect of repaying;

b. That demand for R AND D's core product—a soybean meal based feed marketed as xMeal—was extremely weak;

c. That R AND D did not have the ability to pay Cole a return on his investment, or a realistic prospect of doing so;

b. That R AND D needed additional investments or loans just to maintain its current operations;

c. That there was no realistic prospect that R AND D would issue between $4,000,000.00 and $12,000,000.00 of industrial revenue bonds;

d. That there was no realistic prospect that R AND D would secure the proposed bridge financing necessary to issue the industrial revenue bonds; and

e. That there were no realistic prospect for R AND D to obtain additional capital investments other than through Cole.

31. At the time that R AND D and its agents made the representations identified in paragraphs 16 – 29, above, they knew the representations were false or made the representations negligently and without regard for the truth of the same.

32. R AND D and its agents made the misrepresentations identified in paragraphs 16 – 29, above, in order to induce Cole to purchase Units in the Company.

33. R AND D and its agents intended that Cole rely on the misrepresentations identified herein and invest in R AND D.

34. The misrepresentations by R AND D and its agents were material to Cole's decision to purchase Units in R AND D.

35. Cole continues to hold a 3.625% ownership interest in R AND D.

C. <u>R AND D solicits – and Cole loans – and additional $15,500.00.</u>

36. In January, 2016, based on the representations made in paragraphs 16 – 29, above, Cole also loaned R AND D $15,500.00 (the "Loan").

37. The Loan is evidenced by a Promissory Note dated January 10, 2016 in the original principal amount of $15,500.00 and executed by Dennis on behalf of R AND D (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit "A".

38. The Note matured on January 15, 2016, and pursuant to the terms thereof a $500 late fee was assessed and added to the principal obligation when the Note went unpaid on January 22, 2016.

39. Pursuant to the terms of the Note, the principal balance due thereunder shall accrue interest at a rate not less than 10% per annum from and after January 22, 2016.

40. As of January 23, 2018 the Note remains unpaid and there is currently due and owing thereunder the principal balance of $16,000.00 together with accrued interest of $3,206.16 and interest continues to accrue from and after January 23, 2018 at the rate of 10% per annum ($4.38 per diem).

D. <u>Bell and Dennis sell R AND D's assets to Sense Technologies, Inc., divert the proceeds for themselves, and stop communicating with Cole.</u>

41. Sense Technologies, Inc. ("STI") is a corporation established under that laws of British Columbia, Canada and having a principal place of business in Grand Island, Hall County, Nebraska.

42. On or about September 7, 2016, Bell and Dennis, in their capacity as Managers of R AND D, entered into an agreement to sell R AND D's assets to STI, as evidenced by a letter of intent dated September 7, 2016 and a United States Securities and Exchange Commission Form 8-K dated September 21, 2016 (collectively, the

"Agreement"). True and correct copies of the letter of intent and SEC Form 8-K are attached hereto as Exhibits "B" and "C", respectively.

43. The Agreement transfers all of R AND D's interests in and intellectual property relating to its soy-based products to STI. In exchange, STI agreed to (i) raise $1,000,000.00 in working capital for a soybean processing mill; (ii) assist in acquiring an $800,000 loan to settle a lien on a facility in Scribner, Nebraska; (iii) issue and allot shares to the Company; (iv) give Bell and Dennis seats on STI's board; and (v) as a condition precedent, hire Bell and Dennis for a salary of $180,000.00 each per year.

44. Instead of issuing shares of STI to the Company, the Agreement provides for the issuance of 1,000,000 shares of common stock to each of Bell and Dennis, and the issuance of 700,000 convertible preferred shares (at a ratio of 1 share to 20 shares of common stock) to Bell and Dennis's designee.

45. On information and belief, Bell and Dennis each received the equivalent of 8,000,000 common shares of STI stock worth approximately $4,000,000.00. Cole received no shares of STI in exchange for the sale of R AND D's assets to STI.

46. R AND D did not receive any benefit from the sale of its assets to STI; Bell and Dennis individually were the only parties to benefit from the transaction.

47. Following the sale to STI and despite repeated requests, Bell and Dennis as mangers of R AND D have failed and refused to communicate with Cole and other shareholders of R AND D regarding the sale of assets to STI or the benefit derived to the Company and its members.

48. On September 19, 2016, Cole sent a letter to R AND D demanding an update on the status of his investment, given the September 7, 2016 letter of intent, as well as the status of his loan to R AND D. A true and correct copy of the letter is attached hereto as Exhibit "D".

49. Despite demand, R AND D, Bell and Dennis have failed and refused to respond to Cole and provide him information to which he is entitled.

## FIRST CLAIM FOR RELIEF
## OFFER AND SALE OF UNREGISTERED SECURITIES
## NEBRASKA SECURITIES ACT

50. Plaintiff incorporates the allegations of paragraphs 1 – 49, above, as if fully set forth herein.

51. The Units are securities as defined by the Securities Act of Nebraska, Neb. Rev. Stat. § 8-1101(15).

52. Cole purchased 362,500 Units from R AND D for the sum of $250,000.00.

53. The Units were not registered with the Nebraska Department of Banking and Finance.

54. The Units were not an exempt security, not sold in an exempt transaction, and did not constitute a federally covered security. The Units were therefore sold in violation of Neb. Rev. Stat. § 8-1104.

55. Cole hereby tenders his Units to R AND D and confirms his willingness to deliver all evidence of ownership of the Units upon receipt of the remedy provided in Neb. Rev. Stat. § 8-1118.

56. Pursuant to Neb. Rev. Stat. § 8-1118, Cole is entitled to recover from R AND D (and as alleged below, from Bell and Dennis) the consideration paid for the security, interest at six percent per annum from the date of each purchase, costs, and reasonable attorney's fees.

57. Bell and Dennis are jointly and severally liable as controlling persons of R AND D.

SECOND CLAIM FOR RELIEF
OFFER AND SALE OF UNREGISTERED SECURITIES
NORTH DAKOTA SECURITIES ACT

58. Plaintiff incorporates the allegations of paragraphs 1 – 57, above, as if fully set forth herein.

59. The Units are securities as defined by the North Dakota's Securities Act of 1951, N.D. Cent. Code § 10-04-02(19).

60. Cole purchased 362,500 Units from R AND D for the sum of $250,000.00.

61. The Units were not registered with the North Dakota Securities Department.

62. The Units were not an exempt security, not sold in an exempt transaction, and did not constitute a federally covered security. The Units were therefore sold in violation of N.D. Cent. Code § 10-04-04.

63. Cole hereby tenders his Units to R AND D and confirms his willingness to deliver all evidence of ownership of the Units upon receipt of the remedy provided in N.D. Cent. Code § 10-04-17.

64. Pursuant to N.D. Cent. Code § 10-04-17, Cole is entitled to recover from R AND D (and, as alleged below, from Bell and Dennis) the consideration paid for the security, interest at six percent per annum from the date of each purchase, costs, and reasonable attorney's fees.

65. Bell and Dennis are jointly and severally liable as controlling persons of R AND D.

THIRD CLAIM FOR RELIEF
SECURITIES FRAUD
NEBRASKA SECURITIES ACT

66. Plaintiff incorporates the allegations contained in paragraphs 1 – 65, above, as if fully set forth herein.

67. R AND D sold Cole his membership Units in R AND D by means of the untrue statements and omissions of material fact set forth in paragraphs 16 – 29, above, and the omissions set forth in paragraph 30, above.

68. Cole did not know of the untrue statements and omissions at the time he purchased his membership units in R AND D.

69. R AND D and its agents either knew of the untrue statements or omissions or could have learned of the untrue statements and omissions through the exercise of reasonable care.

70. Cole purchased 362,500 Units from R AND D for the sum of $250,000.00.

71. Cole hereby tenders his Units to R AND D and confirms his willingness to deliver all evidence of ownership of the Units upon receipt of the remedy provided in Neb. Rev. Stat. § 8-1118.

72. Pursuant to Neb. Rev. Stat. § 8-1118, Cole is entitled to recover from R AND D (and, as alleged below, from Bell and Dennis) the consideration paid for the security, interest at six percent per annum from the date of each purchase, costs, and reasonable attorney's fees.

73. Bell and Dennis are jointly and severally liable as controlling persons of R AND D.

FOURTH CLAIM FOR RELIEF
SECURITIES FRAUD
NORTH DAKOTA SECURITIES ACT

74. Cole incorporates the allegations of paragraphs 1 – 73, above, as if fully set forth herein.

75. R AND D sold Cole his membership Units in R AND D by means of the untrue statements and omissions of material fact set forth in paragraphs 16 – 29, above, and the omissions set forth in paragraph 30, above.

76. Cole hereby tenders his Units to R AND D and confirms his willingness to deliver all evidence of ownership of the Units upon receipt of the remedy provided in N.D. Cent. Code § 10-04-17.

77. Pursuant to N.D. Cent. Code § 10-04-17, Cole is entitled to recover from R AND D (and, as alleged below, from Bell and Dennis) the consideration paid for the security, interest at six percent per annum from the date of each purchase, costs, and reasonable attorney's fees.

78. Bell and Dennis are jointly and severally liable as controlling persons of R AND D.

FIFTH CLAIM FOR RELIEF
BREACH OF PROMISSORY NOTE

79. Plaintiff incorporates the allegations of paragraphs 1 – 78, above, as if fully set forth herein.

80. R AND D has failed to make all payments due and is therefore in default under the Note.

81. As a result of the maturity of the Note pursuant to its terms, all amounts accrued thereunder are immediately due and payable.

82. As of January 23, 2018 the Note remains unpaid and there is currently due and owing thereunder the principal balance of $16,000 together with accrued interest of $3,206.16 and interest continues to accrue from and after January 23, 2018 at the rate of 10% per annum ($4.38 per diem).

83. Despite demand, R AND D has failed and refused to fulfill its obligations under the Note.

84. As a result of R AND D's default, Cole has been damaged in the amount of $19,206.16 together with interest accruing from and after January 23, 2018 at the rate of 10% per annum ($4.38 per diem).

85. There are no conditions precedent to R AND D's performance under the Note and Cole has complied with all of its obligations thereunder.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION AGAINST R AND D

86. Plaintiff incorporates the allegations of paragraphs 1 – 85, above, as if fully set forth herein.

87. In the course of inducing Cole to invest in R AND D, R AND D made a number of false representations of fact as outlined in paragraphs 16 – 29, above, and the omissions set forth in paragraph 30, above.

88. R AND D failed to exercise reasonable care or competence in obtaining the information identified in paragraphs 16 – 29, above, in communicating the same to Cole, and in failing to provide the information set forth in paragraph 30.

89. R AND D provided the information identified in paragraphs 16 – 29, above, with the intent that Cole would rely upon the same in determining whether or not to make the Investment.

90. Cole reasonably and justifiably relied on the representations identified in paragraphs 16 – 29, above, and the absence of the omitted information described in paragraph 30, above, in investing in R AND D and loaning money to R AND D.

91. As a result of his reliance on the representations of R AND D, Cole suffered damages in an amount exceeding $266,000.00.

## SEVENTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY AND DUTY OF GOOD FAITH AND FAIR DEALING

92. Plaintiff incorporates the allegations of paragraphs 1 – 91, above, as if fully set forth herein.

93. Pursuant to Neb. Rev. Stat. § 21-165, Plaintiff brings this claim in the name and on behalf of R AND D against Defendants Bell and Dennis.

94. Plaintiff has not made demand upon R AND D, through its managers Bell and Dennis, to pursue the claim stated herein but such demand would be futile.

95. Pursuant to Neb. Rev. Stat. § 21-138(b), the acts and omissions of Bell and Dennis alleged herein constitute material and substantial breaches of the fiduciary duties of care and loyalty Bell and Dennis owe to R AND D as the controlling members, managers, and officers of R AND D, to wit:

   a. The use by Bell and Dennis of company property and resources for their own personal benefit, to the detriment of the Company;

   b. The appropriation by Bell and Dennis of a Company opportunity; and

   c. The failure by Bell and Dennis to proceed in a manner that promotes the best interests of the Company.

96. Pursuant to Neb. Rev. Stat. § 21-138(d), the acts and omissions of Bell and Dennis alleged herein constitute material and substantial breaches of their obligation as controlling members, managers, and officers of R AND D to discharge their duties in accordance with the contractual provisions of good faith and fair dealing.

97. As a proximate result of Defendants Bell and Dennis's breach of their fiduciary duties of care and loyalty, as well as their duties of good faith and fair dealing, R AND D and its members have been damaged in an amount exceeding $8,000,000.00 to be specifically proven at trial of this matter.

WHEREFORE, Plaintiff, Joshua Cole, respectfully requests that the Court enter judgment against Defendants as follows:

A. For judgment in Cole's favor and against Defendants R AND D, Dennis, and Bell, in the amount of the $250,000.00 Cole paid for membership Units in R AND D, plus interest at the rate of six-percent per annum, costs, and reasonable attorney's fees;

B. For judgment in Cole's favor and against Defendant R AND D in the amount of all losses Cole has suffered as a result of his loan to R AND D, including the $16,000.00 R AND D continues to owe Cole under the Note, plus interest at the rate of ten percent per annum, costs, and reasonable attorney's fees;

C. For judgment in favor of Cole and R AND D, and against Defendants Bell and Dennis, on the claim Cole has asserted on behalf of the Company, in the amount of least $8,000,000.00, plus interest, costs, and reasonable attorney's fees.

D. For such other relief as the Court deems just and equitable.

DATED this 23rd day of January, 2018

    JOSHUA B. COLE, individually and on behalf of R AND D USA, LLC d/b/a SCRIBNER NATURAL PRODUCTS, a Nebraska limited liability company, Plaintiff

    By:     CLINE WILLIAMS
    WRIGHT JOHNSON & OLDFATHER, L.L.P.
    233 South 13th Street
    1900 U.S. Bank Building
    Lincoln, NE 68508-2095
    (402) 474-6900
    abarry@clinewilliams.com
    gfrayser@clinewilliams.com

    By:   s/ Andre R. Barry
    Andre R. Barry - #22505
    Gregory S. Frayser - #24400

4822-1512-3290, v. 1